Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Laurie Fahey*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Laurie Fahey,<br><br>         Plaintiff,<br><br>     v.<br><br>Charles Schwab Corporation Short Term Disability Plan, Charles Schwab Corporation, Sedgwick Claims Management Services, Inc.,<br><br>         Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Laurie Fahey (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Charles Schwab, Corporation, (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. § 1002 (3), which was self insured and allegedly funded by employee and employer contributions. The Company's purpose in establishing the Plan was to provide disability insurance for its employees. Upon information and belief, the Plan is self-insured and may be part of what is known as the Charles Schwab Corporation Short Term Disability Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits.

Upon information and belief, the Plan is funded by the Company's general assets. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan(s)" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the Plan and/or claim administration of the plan to Sedgwick Claims Management Services (hereinafter referred to as "Sedgwick"). Plaintiff believes that as it relates to her claim, Sedgwick functioned as the Plan and/or Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Sedgwick.

5. Upon information and belief, the Company or Plan may have operated under a structural conflict of interest in that it operated in dual roles as the claims administrator and payor of benefits; *to wit*, if it approved Plaintiff's claim it was also liable for payment of

benefits.[1] The Company or Plan's conflict of interest may have also led it to retain a company such as Sedgwick to be the claims administrator in that the Company created and funded the Plan and would directly benefit financially if Sedgwick administered its claims in a parsimonious manner.  Sedgwick's conflict of interest exists in that if it maintained a parsimonious approach to managing the Company or Plan's claims it would benefit directly by potentially fulfilling the terms of its administrative services agreement with the Company or Plan or simply due to the Company experiencing a lower claims experience.

6. The Company, Plan and Sedgwick conduct business within Maricopa County, Arizona.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and a "participant" as defined by 29 U.S.C. §1002(7).  Plaintiff seeks disability income benefits from the Plan pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about December 17, 2010 due to serious medical conditions and was unable to work in her designated occupation as a Specialist – Client Services. Plaintiff has remained disabled as that term is defined in the relevant plan continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits under the relevant Plan.

11. Upon completion of filing for short term disability benefits, Plaintiff was informed her claim for short term disability benefits had been approved by Sedgwick.

12. Upon information and belief, the relevant Plan provides the following definition of disability:

> "Disability means that you are unable (due to injury, illness, or pregnancy) to work at your regular and customary job and you are under the regular and continuous care of a licensed physician, and are unable to work during the period of disability."

13. In a letter dated June 3, 2011 Sedgwick informed Plaintiff it was terminating her disability benefits beyond April 15, 2011.

14. Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed the June 3, 2011 termination of her claim for short term disability benefits.

15. In support of her claim for short term disability benefits, Plaintiff submitted to Sedgwick medical records from her treating physicians supporting her allegation she met the relevant definition of disability under the short term disability plan.

16. During the administrative review of Plaintiff's claim, she applied for, was approved and received social security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

17. SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of December 2010, the same date she told Defendants she became disabled. Plaintiff submitted to Sedgwick a copy of her August 1, 2011 Notice of Award from the Social Security Administration. Plaintiff's claim for social security disability benefits was approved prior to an Administrative Law Judge hearing based on the strength of her medical records alone.

18. SSA's definition of disability is a significantly stricter definition of disability than the one set forth in the aforementioned Plan. Therefore, SSA's approval is relevant evidence for this Court to consider with regard to the lawfulness of Sedgwick's decision to terminate Plaintiff's benefits after ignoring SSA's un-conflicted determination.

19. In further support of her claim, Plaintiff informed Sedgwick her claim for long term disability benefits with Liberty Life Assurance Company of Boston had also been approved. Plaintiff believes the approval of her long term disability claim is relevant evidence for this Court to consider given the definition of disability for the first 24 months of benefits set forth in the relevant long term disability policy is similar, if not identical, to the definition of disability set forth in the relevant short term disability plan.

20. Notwithstanding the approval of her SSA claim, long term disability claim and the additional evidence submitted by Plaintiff, Sedgwick informed Plaintiff in a letter dated October 7, 2011, it was upholding the decision to terminate her benefits beyond April 15, 2011.

21. As part of its review of Plaintiff's claim, Sedgwick referred Plaintiff's claim to Siva Ayyar, M.D. and Lawrence J. Albers, M.D. to conduct medical records only "paper reviews" of her claim.

22. Upon information and belief, Plaintiff believes Drs. Ayyar and Albers are long time consultants for the disability insurance industry and potentially Sedgwick.

Plaintiff further believes Drs. Ayyar and Albers may have an incentive to protect their own consulting relationships with the disability insurance industry and Sedgwick by providing medical record only "paper reviews" which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

23. Neither Dr. Ayyar nor Dr. Albers personally examined Plaintiff, and their opinions that Plaintiff is not prevented from the duties of her regular and customary job are based entirely on a selective review of Plaintiff's medical records which unlawfully and erroneously ignored and/or de-emphasized Plaintiff's evidence, including but not limited to her self-reported complaints and the combined effect Plaintiff's prescribed medications had on her ability to work in any occupation. Plaintiff believes all her evidence was critical to a proper determination because her limitations precluded any gainful employment and were sufficient to meet the definition of disability set forth in the relevant Plan. The aforementioned evidence should have been considered and the fact it was not precluded a full and fair review of Plaintiff's claim.

24. In evaluating Plaintiff's claim on appeal, Sedgwick had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [2]

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

25. In the denial letter dated October 7, 2011, Sedgwick notified Plaintiff she had exhausted her administrative remedies and could file a civil action in federal court pursuant to ERISA § 502(a).

26. Upon information and belief, Sedgwick denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to: arbitrarily rejecting Plaintiff's reliable evidence; failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability and emphasizing evidence which suggested an opposite conclusion; failing to consider and/or ignoring the Social Security Administration's approval of Plaintiff's social security disability claim; failing to consider and/or ignore the approval of Plaintiff's long term disability claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments and failing to obtain an Independent Medical Examination when the Plan allowed one and Plaintiff's disabling conditions could not be reasonably or fully evaluated by reviewing only her medical records.

27. Plaintiff believes a reason Sedgwick provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest as referenced *supra* in ¶ 5.

28. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of any Defendant, including but not limited to Sedgwick and any individual who reviewed her claim, and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Sedgwick's decision to deny her claim.

29. With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if

the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

30. As a direct result of Sedgwick's decisions to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

31. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

32. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order directing Defendants to pay any and all disability benefits due as a result of being found disabled pursuant to the Plan from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. An Order directing the liable Defendant(s) to pay any other employee benefits Plaintiff is entitled to from the Plan and/or Company as a result of being found disabled;

C. An Order directing the liable Defendant(s) to pay Plaintiff the aforementioned benefits until the time she meets the Plan's conditions for termination of benefits;

D. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E. For such other and further relief as the Court deems just and proper.

DATED this 8th day of February, 2012.

    SCOTT E. DAVIS. P.C.

    By:   /s/ Scott E. Davis
           Scott E. Davis
           Attorney for Plaintiff